UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT - WI
FILED

2019 OCT 30 P 4:07

STEPHEN C. DRIES
CLERK

UNITED STATES OF AMERICA,

    Plaintiff,

v.    Case No. 19-CR-

KATIE L. HAREID,

    Defendant.

**19-CR-184**

## PLEA AGREEMENT

1.    The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, Paul L. Kanter, Criminal Chief, and Gail J. Hoffman, Assistant United States Attorney, and the defendant, Katie L. Hareid, individually and by attorney Patrick Knight, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGE

2.    The defendant has been charged in a one-count Information, which alleges a violation of Title 21, United States Code, Section 843(a)(3).

3.    The defendant has read and fully understands the charge contained in the Information. She fully understands the nature and elements of the crime with which she has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4.    The defendant voluntarily agrees to waive prosecution by Indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

**THE UNITED STATES ATTORNEY CHARGES THAT:**

*1. At all times relevant:*

   *a) Defendant, Katie L. Hareid was a dentist licensed to practice in the State of Wisconsin.*
   *b) Hareid was employed as a dentist at a dental office located in Milwaukee, Wisconsin.*
   *c) Hareid maintained a registration with the U.S. Drug Enforcement Administration ("DEA") that authorized her to prescribe administer, dispense, and order controlled substances, including Hydrocodone, Percocet, Oxycodone, and Valium.*
   *d) As a DEA registrant, Hareid was only permitted to prescribe, administer, dispense, and order controlled substances for a legitimate medical purpose within the scope of her professional practice.*

*2. During the period from May 24, 2016 through November 2016, in the State and the Eastern District of Wisconsin,*

**KATIE L. HAREID,**

*did knowingly and intentionally obtain and acquire Schedule II and IV controlled substances by misrepresentation, fraud, and forgery, in that Hareid acquired and obtained controlled substances in the following manner:*

   *a. Hareid, using her own DEA registration number, wrote a prescription for a Schedule II controlled substance in the name of another that she used to obtain narcotics for her own use;*
   *b. Hareid forged prescriptions using the names of fictitious and actual patients for Schedule II and IV controlled substances in the names of six other dentists to obtain narcotics for her own use; and*
   *c. As the result of her actions, Hareid issued at least 22 fraudulent prescriptions and obtained at least 500 tablets of Schedule II and IV controlled substances, including Hydrocodone, Percocet, Oxycodone and Valium, for her own use.*

*In violation of Title 21, United States Code, Section 843(a)(3).*

6. The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense charged in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable

doubt. The defendant admits to the following facts and that these facts establish her guilt beyond a reasonable doubt:

At all times relevant to this prosecution and, in particular, during the period from May 2016, to November 2016, the defendant, Katie L. Hareid, was a dentist licensed to practice in the State of Wisconsin. During this period, Hareid was employed by a dental clinic, Bay View Dental Care, located at 33xx S. Kinnickinnic Avenue in Milwaukee, Wisconsin. In connection with her practice, Hareid obtained a registration from the Drug Enforcement Administration ("DEA") that authorized her to prescribe controlled substances for legitimate medical purposes within the scope of her professional practice.

In December 2016, DEA agents received information from the City of Milwaukee Police Department ("MPD") regarding Hareid, previously employed as a dentist at Bay View Dental Care. In short, the office manager at Bay View Dental Care had called MPD to report that Katie Hareid, had been issuing fraudulent prescriptions for medications to several individuals, including herself.

On December 1, 2016, DEA case agents interviewed the officer manager of Bay View Dental Care and J.A.K. J.A.K. owns Bay View Dental Care, and is also a practicing dentist at the clinic. J.A.K. stated that Hareid began working at the clinic on May 12, 2016. On November 21, 2016, the clinic received a call from a local pharmacist regarding a suspicious prescription. The prescription, dated October 13, 2016, was written to K.H. for medication containing Hydrocodone and Amoxicillin that purported to be issued by T.B., a dentist working at the clinic.

The office manager informed case agents that K.H. had not been a patient at the clinic since 2009. T.B. confirmed to the pharmacist that T.B. did not issue the prescription in question. On November 22, 2016, the pharmacy provided a still photograph of the prescription transaction in question to J.A.K. from a surveillance video. This photograph depicted a female, identified by J.A.K. as Katie Hareid, picking up the prescription fraudulently issued in the name K.H. purportedly by T.B.

As a result of this information, the clinic's office manager conducted an audit of the deleted scripts on their computer system from January 1, 2016, through November 23, 2016. This audit revealed numerous prescriptions written to Katie Hareid purportedly prescribed by other dentists working at the clinic. At the outset, the office manager initially located approximately twelve prescriptions purportedly issued to Hareid for various medications most of which contained opiate pain killers. The clinic dentists listed as the prescribing dentists reviewed these prescriptions and denied ever prescribing the medications to Hareid.

During the course of her review, the office manager also uncovered deleted recent prescriptions, including some of which that were written to patients who were not current patients at their office. It appeared that some patients' biographical information had been altered in the computer, and that some fictitious patient names had been created. Hareid's employment with Bay View Dental Care was terminated forthwith.

3

DEA, in conjunction with Bay View Dental Care, located at least 22 fraudulent prescriptions from May 24, 2016, through November 14, 2016, created by Hareid for Hydrocodone, Percocet, Oxycodone and Valium purportedly issued by six different clinic dentists to Hareid. These prescriptions were written to either Hareid, a past patient of the dental clinic, or a fictitious person created by Hareid, and accounted for at least 500 tablets of narcotics.

On or about February 9, 2017, in the presence of her attorney, DEA case agents conducted an interview of Hareid. Hareid stated that in the summer of 2014 she was injured in a car accident, and was prescribed Percocet pills for her injury. Hareid indicated that she had lingering neck and back issues, and "life issues," so she began self-medicating with the narcotics.

Hareid admitted that she never received any legitimate prescriptions from other dentists working at Bay View Dental Care. Hareid further admitted to using the dentists' name to forge prescriptions, stating that she mostly used T.B.'s name; however, she used the names of different dentists on certain days. Hareid stated that she alone created the fraudulent prescriptions.

Hareid further admitted that to write the prescriptions, she accessed the computer system at the clinic. Afterwards she deleted some, but others remained in the system. Hareid also admitted to dropping off all the fraudulent scripts at the pharmacies – often different pharmacies. After the pharmacies filled the prescriptions, Hareid picked them up and used the pills.

In addition, Hareid stated that she also used her own DEA registration number to write a prescription for Percocets to B.D. which Hareid picked up and used.

As is relevant here, all the Hydrocodone, Percocet and Oxycodone medications fraudulently obtained by Hareid are Schedule II controlled substances, respectively. The Valium fraudulently obtained by Hareid is a Schedule IV controlled substance.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: Four years and $250,000. The charge also carries a mandatory special assessment of $100.00, and a maximum of one year of supervised release to follow any term of confinement. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 28 of this agreement.

4

## ELEMENTS

8.  The parties understand and agree that in order to sustain the charge of obtaining controlled substances by misrepresentation, fraud and forgery in violation of Title 21, United States Code, Section 843(a)(3) as set forth in the Information, the government must prove each of the following propositions beyond a reasonable doubt:

> First, that Hareid acquired or obtained possession of the controlled substance in question, hydrocodone, by misrepresentation, fraud, or forgery, as charged;
>
> Second, that Hareid did so knowingly and intentionally; and,
>
> Third, that Hareid knew the substance was a controlled substance.

## SENTENCING PROVISIONS

9.  The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

10. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

11. The defendant acknowledges and agrees that her attorney has discussed the potentially applicable sentencing guidelines provisions with her to the defendant's satisfaction.

12. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to

5

withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

13. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

15. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in the Information is 8 under Sentencing Guidelines Manual § 2D2.2(a).

## Use of a Special Skill

16. The parties agree to recommend to the sentencing court that the defendant's offense level should be increased two levels pursuant to Sentencing Guidelines Manual § 3B1.3 because the defendant used a special skill as licensed dentist in a manner that significantly facilitated the commission of the offense of conviction.

## Acceptance of Responsibility

17.     The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility.

## Diversion Recommendation

18.     The parties understand and agree that this Plea Agreement is filed pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The parties agree that the government will move to dismiss this prosecution at the conclusion of the diversion period, if the defendant fully complies with the terms of the agreement specified herein.

19.     The parties agree that the defendant will to submit to an assessment conducted by the United States Probation Office to determine appropriate conditions of supervision during the diversion period. Once determined, the defendant agrees to abide by those conditions.

20.     The parties further agree that the diversion period shall be three years. During the diversion period, in addition to any conditions of supervision determined appropriate by the United States Probation Department, the defendant shall (a) abide by all federal, state and local laws and regulations relating to controlled substances; (b) adhere to the terms and conditions of any and all Orders and Agreements with the Wisconsin Dental Board, Department of Safety and Professional Services, and/or any impaired professionals program, including all requirements for treatment and practice limitations; (c) refrain from consuming any controlled substances that are not prescribed or dispensed to her by another licensed practitioner acting in the usual course of professional practice for a legitimate medical condition; (d) only use any prescribed medications as directed and take the correct dose prescribed; (e) refrain from prescribing, procuring, dispensing or administering any narcotic controlled substances; (f) thereafter, only prescribe narcotic controlled substances for legitimate medical purposes, as required by 21 U.S.C. Section

827(c)(1)(a) and 21 CFR Section 1306.04(a); and (g) refrain from prescribing any controlled substances to herself, family members, employees, or any of their immediate families for the life of this agreement. As a further condition of diversion, the defendant agrees to pay restitution in the amount of $10,000 to Dr. J.A.K., for loss accrued as a result of the defendant's conduct. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, upon request of the FLU during the period of diversion, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

## Court's Determinations at Sentencing

21. The parties acknowledge, understand, and agree that if, in the determination of the United States Attorney's Office and the United States Probation Office, the defendant fails to comply with one or more of the conditions of diversion, the court shall proceed to sentencing on the offense set forth in the Information. At such time, neither the sentencing court nor the United States Probation Office shall be bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

22. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## Sentencing Recommendations

23. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but

8

not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

24. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

## **FINANCIAL MATTERS**

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

26. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

### **Special Assessment**

27. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### **Restitution**

28. The defendant agrees to pay restitution in the amount of $10,000 as ordered by the court to Dr. J.A.K. for loss accrued as a result of the defendant's conduct. The defendant

9

understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## **DEFENDANT'S WAIVER OF RIGHTS**

29. In entering this agreement, the defendant acknowledges and understands that she surrenders any claims she may have raised in any pretrial motion, as well as certain rights which include the following:

    a. If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

    c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

    d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on her own behalf. The defendant would be entitled to compulsory process to call witnesses.

10

    e.    At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on her own behalf.

30. The defendant acknowledges and understands that by pleading guilty she is waiving all the rights set forth above. The defendant further acknowledges the fact that her attorney has explained these rights to her and the consequences of her waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31. The defendant acknowledges and understands that she will be adjudicated guilty of the offense to which she will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

32. The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

33. The defendant acknowledges, understands, and agrees that the defendant has discussed with her attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

34. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

35. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

36. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

37. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

38. The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of her breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and her attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that she continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

39. The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 10/26/19

KATIE L. HAREID
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 10/26/19

PATRICK KNIGHT
Attorney for Defendant

For the United States of America:

Date: 10/30/19

MATTHEW D. KRUEGER
United States Attorney

Date: 10/30/19

GAIL J. HOFFMAN
Assistant United States Attorney

14